## Seth Jones *v.* Stanton *et al.*

It seems there is nothing in the statute authorizing a forthcoming bond, which would exclude executors from the benefit of the act.

*Quere*, as to whether, under our statute, an execution on a forfeited forthcoming bond given by executors can be prosecuted against them in their representative capacity, and against the security in his own right.

It is error to perpetually supercede an execution emanating from a forfeited forthcoming bond, when the error alleged precedes the statutory judgment on the bond, and where the judgment cannot be set aside on motion.

IN ERROR from the circuit court of the county of Adams.

Stanton & Bingaman, executors of B. Harman, filed a petition to supersede an execution prosecuted by Jones on a judgment on a forthcoming bond. The original judgment was obtained by Jones in that court at the May term, 1840, for nine thousand six hundred and fifty-three dollars, and costs.    This execution on the original judgment was levied on twenty slaves of said Harman's estate, and a bond taken, with A. L. Bingaman security. It was returned forfeited, and the petition was filed to supersede the execution issued upon it.    The grounds of the petition were:

1. There is no legal judgment corresponding with the execution sought to be suspended.

2. There is error in an execution emanating against the executors of a deceased person and an individual; that such cannot be legally joined in an execution at law.

3. Other errors appearing, &c.

The petition was allowed, and a writ of supersedeas issued.

At the November term, 1841, of the circuit court, after argument on both sides, the supersedeas to the execution on the bond was made perpetual, and Jones was taxed with the costs.    He then moved to quash the forthcoming bond as a nullity, but his

motion was overruled. He then filed a bill of exceptions, and prosecuted his writ of error.

BOYD for plaintiff in error.

The court certainly erred in one or the other of its decisions, and either error will be sufficient to reverse the judgment. If the supersedeas was properly granted and made perpetual, then the bond ought to have been quashed, so as to remit the party back to his original judgment. If, however, the bond was valid, and not quashable, then the supersedeas should not have been granted. One of these results is inevitable, for the original judgment was good, and the plaintiff has a right to insist on a full satisfaction. But as it now stands, his hands are tied up, and his judgment slumbers in abeyance. He cannot have his execution on either judgment: not on the first, for that is merged in the statutory judgment on the bond; and not on the second, for that is stayed by a perpetual supersedeas.

QUITMAN & MCMURRAN for defendant in error.

Two errors are assigned by the plaintiff in this case. 1. Error in granting the supersedeas and making it perpetual. 2. Error in refusing to quash forthcoming bond.

In regard to the first assignment of error, touching the legality of the supersedeas, strictly the question cannot arise upon the record, in our opinion. No exception appears of record to the judgment or decision of the court below in sustaining and making perpetual the supersedeas, and the facts before the court in deciding the question do not on the record before us appear in this court. If counsel intended to reserve this point, they ought to have taken exceptions, which would have exhibited in the record in this court at least the transcript or copy of the execution superseded, which was before the court below when that court decided the perpetuation of the supersedeas. This objection has been raised by agreement since entered into.

But taking the petition for supersedeas, the fiat for the writ, the writ, and the exhibits of the petition, and we entertain no doubt of the decision of the court on this point being the same with that of the court below. The execution issued on the forthcoming

bond forfeited was irregular, and not warranted by any law or usage. It issued against the goods and chattels of B. Harman, deceased, in the hands of his executors, Stanton & Bingaman, and against the lands and tenements, goods and chattels of Adam L. Bingaman. Executors or administrators of an estate cannot sue or be sued with individuals or other persons in the same action at law. The executor or administrator cannot join in a suit for the estate or claim due to him individually, and so *vice versa.* And this rule applies as strongly to the process to execute the judgment, as it does to the writ prosecuted to obtain that judgment in the first instance. 3 Bac. Abr. Tit. Ex'r. & Adm'r. p. 532, letter O.

If it be asked what form of an execution should be adopted and issued on the forthcoming bond, the question is readily answered. The forthcoming bond, on its face, as well as according to any legal construction it can receive, binds Stanton & Bingaman personally; and upon its forfeiture the statutory judgment is against them personally. The estate is not bound by such a bond, but they are; and interested as executors in the estate, and as such defendants in the first execution, they had a right to give the bond, if the plaintiff or sheriff received it, and the force and effect of the judgment on it is against them personally; and the original judgment being entirely merged in the judgment on the forthcoming bond, an execution can and must issue. regularly on the statutory judgment against them. It is just like a party giving a note or common law bond as executor or administrator; he is personally liable, and is to be sued accordingly. Bailey on Bills, 76, 77; note, 53, 55; 2 Brod. & Bing. 460, Childs *v.* Norcum *et al;* 1 Term Rep. 487, King *v.* Thorn.

This to our mind is also a conclusive answer to the objection that the court did not quash the forthcoming bond, the second error assigned. The great argument of the opposite counsel is, that the bond is void, an absolute nullity. But they produce no authority to sustain this position; and the bond is no more void than any common bond or note given by an executor or administrator. And the plaintiff having accepted it, is estopped on any principle from now attempting to avoid it. The decisions of this court upon the subject of forthcoming bonds, considering the

various questions which have arisen under it, are decisive on this point. The bond was forfeited, and had the force and effect of a judgment at law on the first day of the November term, 1840, and the motion to quash was made at the November term, 1841, of the circuit court of Adams county, a year, or more than a year, having elapsed. and two whole terms of the court gone, and in the third term after the forfeiture the motion is made. It comes too late. The court have so repeatedly decided that the motion to quash the bond must be made at the first term when forfeited, that it would be a waste of time to discuss the point. 1 How. Rep. 98; 2 How. Reports, 1; 4 ditto, 363, 347. That the court cannot look behind the judgment, just like any other judgment. 4 How. Rep. 363, Wanzer *v.* Barker; 5 do. 200, Bank of U. S. *v.* Patton, 231, 232; do. 564, 568.

These authorities are clear, to show that the court will not go behind the bond after the term to which it is forfeited, and will not set aside the statutory judgment, when applied to in due time, for any irregularity in names of parties, &c.

G. S. YERGER, in reply.

1. The first point is, whether executors can, as such, execute a forthcoming bond, when the judgment is against them as executors.

I see no reason why they cannot. It is the property of the estate that is levied on, and the law authorizing forthcoming bonds to be taken was intended to permit the property to remain in the hands of the defendants until the sale, and thus avoid the expense whilst in the sheriff's hands. If the defendants as executors are not permitted to execute a bond, as such, the consequence would be that few executors would involve personal responsibility to do so, and the estate be greatly injured.

It is said that an executor or administrator giving a note or bond, as executor, only makes him personally liable. This is true, except in cases where the law authorises them to execute a note or bond in their representative capacity. In such case, it only binds the estate, not them. 2 Williams on Executors, 1258, 1259; Dunn *v.* Coxe, 3 Bingham, 20; 7 Taunton, 581. So executors may promise, as executors, to pay counsel fees, and the estate will

be bound.    2 H. & Munf. 9; Sterritt's Appeal, 2 Tenn. Rep. 426, see also Emanuel and Barrett *v.* Norcum, (decided at this term of the court) ante, page 150.

The object of the forthcoming law would be defeated in all cases where a party dies, unless his executor, as such, has the right to give the bond binding on the estate.    See also 2 Tuck. Com. 360, 361; 5 How. 482.

But it is said if this is so, the execution will be against the executors, to be levied *"de bonis testatoris,"* and against the sureties to be levied *"de bonis propriis."*    Certainly it must, and properly it should be so, in all cases where the law allows the personal representative of one man to be joined in a suit with another.

At common law, in regard to personal contracts, either joint or joint and several, if one died, the survivor in the first case, and either the survivor alone, or the personal representative alone, in the second case, could be sued.    And, when the judgment is joint, it survives against the survivors, and execution can issue alone against them.    But this is only where the personal estate is proceeded against.    Therefore you cannot revive against the personal representative, and have an execution against him and the survivor.

But this is not the case in England, where the judgment binds lands, for there you must proceed and have execution against the survivor in the judgment and all the heirs and terre-tenants of the deceased.    20 John. Rep. 120.

But the law in our state is wholly changed.    Contracts are here not joint, but all or either may be sued, and the death of one does not discharge his estate.    So the death of one judgment debtor does not, as in England, discharge his estate at law.    See How. & Hut. 594, 595, secs. 28, 29; ibid. 578, sec. 8.

There is no question that in our state an action will lie against the executors of a deceased party, jointly with the survivor; and, if judgment is against two and one dies, it may be revived against the personal representatives of the deceased, and execution issue against them and the other.    2 Dev. R. 298, 303; 2 Humphrey's Rep. 514.

So that in our state, and all other states where the estate is not

discharged by the death of one party, execution may issue against the personal representative of the survivor, as in this case.

Therefore, when a forthcoming bond is given by executors and is forfeited, execution will run against them *de bonis testatoris*, and against the sureties *de bonis propriis*.

2. But if the court decide that an executor, as such, cannot give a forthcoming bond, it then follows that no delivery bond can be taken. The statute does not authorize any but defendants to give the bond. If they are sued as executors, and are not embraced in the statute, it follows that none can be taken. If so, the bond ought to have been quashed.

The sheriff, at common law, can receive nothing but money in discharge of the execution. He cannot take the note or bond of the defendant, or of any third person. If he does, the plaintiff is not bound by it, but may proceed with his execution.

If an executor defendant cannot give a forthcoming bond, in the character of executor, the bond is unauthorized, and should have been quashed, and execution issued on the original judgment.

On this latter point, that the sheriff had no authority to receive the forthcoming bond, if it was not authorized by the statute, or indeed any thing but money, vide 9 John. R. 262; 6 Cowen, 465; 1 Cowen, 499; 4 Cowen, 553; 5 How. 621; 2 Stew. & Por. 109; Lytle *v.* Etherly, 10 Yer.

Mr. Justice CLAYTON delivered the opinion of the court.

The plaintiff in error, Jones, obtained a judgment at the June term 1840, of the circuit court of Adams county, against Stanton and Bingaman, as executors of B. Harman, deceased, for nine thousand six hundred and fifty-three dollars. An execution issued, which was levied upon some twenty slaves, and a forthcoming bond was given by the executors in their representative capacity, with A. L. Bingaman as surety, which was returned forfeited to the following term. An alias execution issued, which was stopped by a supersedeas, and the supersedeas made perpetual, at the November term 1841, of said court. A motion was made by the plaintiff, at the same term of the court, to quash the forthcoming bond, which was overruled by the court, because not made at the term to which the bond was returned. These matters were then

set forth in a bill of exceptions, and the case brought to this court by writ of error.

The case presents this singular aspect. The plaintiff had a valid judgment, which was satisfied by a levy of his execution and forfeiture of the bond; the execution from the judgment upon the bond was, in the language of the record, perpetually superseded, and the bond itself sustained, because the motion to quash was made at an improper term. This appears very much like a right without a remedy.

The first question, presented in argument is, whether the executors as such had a right to give a forthcoming bond, and thereby to bind the estate. I have been able to find no case in which that point has been discussed, but Brooke's administrator *v.* Levy's executor, 1 Ran. 1, is a case in which such a bond appears to have been given. It is very briefly reported, and the statement on this point merely says: " The appellee made a motion against the appellant and his surety in a forthcoming bond." No objection was urged to the bond on this ground, either by counsel or by the court, and judgment was rendered upon it. As the whole law on this subject has been much canvassed, in that state, it would seem to have been taken for granted, that such a bond was legal. We do not see any thing in the statute of this state, which restricts the privilege exclusively to persons acting in their own right. It is a law supposed to operate beneficially for defendants, and claims a liberal interpretation at our hands. But it is not necessary to decide that question.

The defendants voluntarily gave the bond, they did not move to quash it at the term to which it was returned forfeited, and we think they could not afterwards treat it as a nullity, and regard it as absolutely void. Possibly at that term either party might have quashed it on motion, not because it was void, but because it was irregular; though as to this we give no opinion. But after that term, when according to the current of decisions here, the day which the parties had in court was passed, neither party could say that the judgment upon it was absolutely void. If only voidable, it remained in force, until set aside or reversed, in some regular and recognized manner.

It is now objected that no execution can be issued upon it, be-

Seth Jones *v.* Stanton *et al.*

cause it would have to be against the executors, to be levied of the goods of the testator in their hands, and against the surety in his own right.

At common law this objection would have been valid, but the rule is probably changed here by reason of the several statutes, making joint obligations joint and several, and making them survive against the representatives of a decedent. This construction has been put upon a similar statute in several of our sister states. Thus in North Carolina it has been holden, that a joint action could be maintained against the surviving obligor, and the executor of a dead one. Smith *v.* Fagan *et al.*, 2 Devereaux, 302. The same has been decided in Tennessee, in regard to partners. Simpson and Choat *v.* Young *et al.*, 2 Hum. 514. In Virginia it has been ruled that the law respecting partitions, joint rights and obligations, is applicable to joint judgments. Roane's administrator *v.* Drummond's administrator, 6 Ran. 182.

But this point does not call for any authoritative decision at our hands ; the same reasoning applies to it, which has been urged on the other point. There is already a subsisting judgment, which even if it be erroneous, is valid, until reversed. The parties have never complained of it, in any way which authorized a reversal, and we think the plaintiff is entitled to have it satisfied. The judgment of the court below is therefore reversed, upon the single ground that the execution should not be perpetually suspended or superseded, in a case in which the error complained of preceded the judgment, and in which the judgment cannot be set aside upon motion merely.

Judgment reversed.